May it please the Court, my name is Eric Cardall and I represent the appellants in the case who seek a reversal of the lower court opinion denying a preliminary injunction. The District Court denied the preliminary injunction primarily based on the likelihood of success on the data phase factor because of lack of imminent threat of enforcement to satisfy Ex parte Young's exception to the State's sovereign immunity doctrine. Specifically, the Court held, and this is a quote, the Eighth Circuit applies an imminent standard which is higher for Ex parte Young claims than for Article III claims. That's at page 13. And then this brings into play the Court's 281 Care Committee case. And Judge Smith, you were on the panel back then. And the 281 Care Committee case, if you recall, Judge, was connected to the kind of Sixth Circuit case and the Eighth Circuit case. The Eighth Circuit case was decided in 2011 on jurisdiction standing under Article III. Susan B. Anthony List's case was the Sixth Circuit case which went the other way. There was a circuit split. It went up to the U.S. Supreme Court. And Susan B. Anthony List basically agreed with Your Honor and the panel's decision. So the dates of that were, you know, the 281 Care Committee 281 case was 2011. The Susan B. Anthony List case was the Supreme Court case, June 16, 2014. And the 281 Care Committee No. 2 opinion was September 2, 2014. And why that's significant is that the language of that case under Article III reads as follows. It's three sentences. It's in the brief, Susan B. Anthony List. When an individual is subject to a threat, an actual arrest, prosecution or other enforcement, it's not a prerequisite to challenging the law. Instead, we have permitted pre-enforcement review under circumstances that render the threat and enforcement sufficiently imminent. Specifically, we have held that a plaintiff satisfies the injury and fact requirement where he alleges, quote, an intention to engage in a course of conduct arguably affected with a constitutional interest but prescribed by a statute and there exists a credible threat of prosecution there under. Now that's Article III. Now we're moving over to this other area and that is the ex parte exception to the state sovereignty doctrine. And on Friday, the U.S. Supreme Court, I think, put to rest whether this age circuit has a different standard for these two things. I put a 28-J letter in last night. I don't know if you received a copy, but I quoted the relevant section and it's only about two sentences. It appears these particular defendants fall within the scope of ex parte Young's historic exception to state sovereign immunity. Each of these defendants is an executive, licensing official who, and I'm going to stop here, may or must take enforcement actions against the petitioners if they violate the terms of Texas Health and Safety Code. Accordingly, we hold that sovereign immunity does not bar the petitioner's suit. Counsel, does it matter that the Supreme Court's case last week was on a motion to dismiss and this case is resolved on summary judgments with affidavits in the record regarding the official's potential for enforcing the statute? Oh, I think it does make a difference. You move from Rule 12 and then there's, you know, you rely on the truth of the allegations to complain. Preliminary injunction has a different stage of the proceeding. But here, the principal fact is just like the Texas laws, 211B.16, Minnesota Statute Subdivisions 3, says that a county attorney may prosecute for violations of the chapter. So that fact's not going to change, Your Honor, based on an affidavit saying that we don't have a present intent to prosecute. So I would take the position that Friday was surely a corroboration, an affirmation, a development of doctrine when it said may or must. It covers when a statute says a prosecutor may prosecute. And so 211B.16 Subdivision 3 says a county attorney may prosecute for substance claims. Is your argument that the recent Supreme Court case, because it said may, has thrown out all of the prior case law about a threat of prosecution? No, actually, I think it can be read completely consistently with Susan B. Anthony List. And I think the A Circuit case under Article 3, 281 Care Committee, Susan B. Anthony, and then the whole Women's Health v. Jackson case can all be read consistently, that the rule would be that the eminent standard under the ex parte exception to state sovereign immunity is the same or similar as the eminent standard under Article 3. And so this idea that the U.S. District Court has . . . In Texas, it's a new law. The new law is enforced civilly. In Minnesota, it's an older law, but subsequent to the 2004 amendments, it's been enforced civilly. In Texas, the county attorneys can prosecute violations. In Minnesota, the county attorneys can prosecute violations. The Court struggled a little bit, as you see in Justice Thomas' opinion, on whether the Texas law allowed the executive licensing officials to prosecute. But in the end, they concluded to leave them in. Justice Thomas read the laws a little differently. But 211B.06 cannot be misread. 211B.06 says a county attorney may prosecute for violations of 211, which includes 211B.02. And so when we look at the statements of the county attorneys, County Attorney Freeman, Metz, Sonneman, and Backstrom, they're about the same. I have no present intention to threaten enforcement of a violation of Minnesota Statute 211B.02 by any person or entity, and I have no present intention to commence civil or criminal proceedings under the same. So, you know, but the way that, as the Court knows, prosecutions work is there are investigations first. And these affidavits don't reflect that complaints were filed under 211B.02 or that investigations occurred where law enforcement officers recommended prosecution. So these appear to be statements that are made to avoid this Court's jurisdiction. Are those in the record in this case, that there were active investigations for potential charges? There's nothing in the record that says that there were any. With respect to the enforcement of the statute, as the Court knows, in 2002, there were two criminal prosecutions. I was involved in one of them. The reaction with respect to that was to go to the legislature and reinforce the penalties regarding violations of 211B. So 211B was amended so that there was civil prosecution up to $5,000 fines per violation in addition to the criminal penalties of 90 days, up to 90 days in jail, at that time $700,000. And so this is not a statute that's fallen out of use. In the record, there's a 2014 Court of Appeals opinion enforcing the statute. There's a 2017 Court of Appeals opinion enforcing the statute. There is real deterrence here. This is not a statute that's fallen out of use. In fact, if anything, the government said banning false political speech in Minnesota is more important than ever, which, of course, is inconsistent with 281 Care Committee. 281 Care Committee found a portion of the Campaign Fair Practices Act violative. The government did not respond by reviewing the rest of the provisions of the Fair Campaign Practices Act and repealing the offensive ones. Rather, this is the way we have to do it, provision by provision. And so what I'm trying to do is protect my clients' interests. Another election is coming up. My clients are lay people. They're ordinary citizens. They only participate in politics when it's important. There's time between elections. When we brought the preliminary injunction, it was my client's idea. They said there's elections coming up and we want to stay out of trouble. And that was their motivation. Right now, they're not bugging me. I know they'll be bugging me when the next election comes. And there are, it's sort of interesting because to some people, the statute probably isn't very important. Apparently the county attorneys, it's not very important. But people who get charged under 211B.02, they suffer, and I've represented some of them. Are those cases where there have been charges, those who have gone through State processes of appeal? Yes. One of them, right. I represented a party. I think two of them I did. Another one, another attorney represented them. How far up the State chain did it go? Minnesota Court of Appeals, it did not reach the Minnesota Supreme Court, and the petitions to the U.S. Supreme Court were denied, or at least the one. Thank you, Your Honor. I'll save the rest of my time for rebuttal. Thank you, Mr. Cardo. Ms. Martinson, you can get yourself prepared. May it please the Court. My name is Christiana Martinson. I'm an assistant Hennepin County attorney, and this morning I'm appearing on behalf of all appellees. This Court should affirm the district court's denial of appellant's motion for a preliminary injunction, a motion that required appellants to demonstrate that the four data phase factors weigh in favor of the extraordinary relief that they request. Appellants move for a preliminary injunction nearly one year after they filed the complaint in this case, despite no material change to the facts on the ground. And this delay undermines any claim that they are likely to be irreparably harmed if the county attorneys are not enjoined. In addition Did the P.I. filing, did that coincide with an upcoming election at all? Do you recall? So my understanding, so there was obviously an election in, a general election in November of 2020. The P.I. filing occurred, I believe, July 20th or thereabouts of 2020. There was a, Minnesota has a candidate filing deadline that was, I believe, June 2nd or 3rd of 2020. So the P.I. filing was almost seven weeks after that candidate filing deadline. And then it was actually, the motion was actually heard after the primary election, so if that makes sense. So the delay is not explained by the election cycle. And in addition, the county attorneys were not involved in any of the civil proceedings or threats of civil enforcement that appellants claim. There have been no criminal prosecutions under 211B.02 since it was enacted nearly 30 years ago, or more than 30 years ago, excuse me. And each county attorney filed the declaration stating that he or she had never enforced 211B.02 and had no intention of enforcing 211B.02 against anyone. What about the civil enforcements that Mr. Cardall points to? So the county attorneys had no involvement in any of those civil enforcement actions. And in fact, the most recent civil enforcement action, I believe, took place approximately five years ago. So none of those were particularly ---- Who brings the civil enforcements? So a third party can bring a civil enforcement action with the Office of Administrative Hearings. And I think it's important to note that the county attorney, in his official capacity as a criminal prosecutor for the State of Minnesota, which is how he's being ---- how they are being sued in this case, the county attorney can't bring a civil enforcement action later in the process. So there's a prima facie review by an administrative law judge, then it goes to a probable cause hearing, then an evidentiary hearing, and then if the ALJ, the panel of ALJs decides that there is in fact a violation, they have the option of referring it to a county attorney for criminal prosecution. Counsel, why is it enough for the county prosecutors to state that they have no present intention of filing a charge? It seems that that's flexible enough that a change of mind or a change of the office holder and immediately the threat is there, or potentially there. Yes, Your Honor. So I think the first important point is that Ex Parte Young and Care Committee II don't require a disavowal by the county attorney. They don't require a statement that the county attorney guarantees that their office will never enforce the statute. And I think it's also important to note that I don't think there's a way that a county attorney could guarantee that a successor in office would never enforce the statute. And so the, as Care Committee II explained, Ex Parte Young does not apply when the defendant has not enforced or threatened to enforce the challenge statute. So that has to be something less than a guarantee that the statute will never be enforced. And the, there are cases outside of the Eighth Circuit where the Court has found that that imminence requirement of Ex Parte Young is not met, even though the defendant official did not make a statement completely disavowing or guaranteeing they would never enforce the statute. And just a couple examples of that, McBurney v. Cuccinelli out of the Fourth Circuit and Children's Healthcare v. Dieters out of the Sixth Circuit. So the, so Ex Parte Young does not just require authority. It also requires imminence. And I'd like to just touch on whole women's health in the decision that the Supreme Court issued on Friday. And I do think the procedural of posture of that decision is essential. Because it was a Rule 12 motion that the Court was reviewing, they said, these State Agency heads are potentially proper defendants under Ex Parte Young because that authority element of Ex Parte Young is met. And that's similar, Your Honors, to the decision in Care Committee I, where the Court said the Attorney General at the Rule 12 stage is a potentially proper defendant because she has self-determination and some connection to the enforcement of the statute at issue. And then in Care Committee II, which was at summary judgment, the Court said, now that we're at this stage of the case and there's, there's, the Court's looking at evidence, we'll look at the imminence factor as well. The Attorney General has put in a declaration saying that she does not intend to enforce the statute. And so Ex Parte Young does not apply to the Attorney General. And I think this case is like Care Committee II. It's about that imminence factor. And for Ex Parte Young to apply, the county attorneys must take some action to enforce the statute. And here there's no evidence of that in it, because of the declarations they filed and also the way that the OIH proceeding works. And I'd just like to touch on the argument that appellants made about the imminence requirement of Ex Parte Young being essentially the same thing as the credible threat of prosecution. That's under the injury in fact analysis under Article III standing. And, Your Honors, that's contrary to law in this circuit. And again, I'd ask the Court to look at standing and Ex Parte Young. And in that case, the Court found that the plaintiffs had standing to challenge the statute, but at the same time, Ex Parte Young did not apply to the Attorney General and that she was entitled to State sovereign immunity. Under the Supreme Court's opinion in Calderón, standing and Eleventh Amendment immunity are not coextensive. They're two separate jurisdictional issues that have two different rationales. Unless the Court has further questions, I'd ask that the Court affirm the district court's denial of the preliminary injunction motion. Just for clarity, is standing still an issue? Do you think it's still an issue as to standing? Yes, Your Honor. So we've argued that a long history of disuse of the statute undermines Article III standing. And I'm happy to talk about that briefly if that would be helpful. Well, I'm just curious. It just seems, standing seems to be fairly clear here. But if you think there's a basis for it not being, I think it'd probably help you to make sure we understand it. Thank you, Your Honor. So just briefly, under Poe v. Olman, a long history of disuse undermines the credible threat of prosecution under the Article III standing inquiry in a pre-enforcement challenge. And in this case, there have been no ---- There have been administrative enforcements of the statute, though, haven't there? Yes, Your Honor. However, the county attorneys are sued in their capacities as criminal prosecutors for the State, and there have been no criminal prosecutions under 211B.02 since it was enacted. And in fact, there have been no criminal prosecutions under the entire chapter of 211B since it was amended in 2004 to make it so that criminal prosecutions were not mandatory by the county attorneys. They had ---- After 2004, they had discretion. And so there's never been any prosecution. So I think the best case, apart from Poe v. Olman, is the Thomas v. Anchorage case when the Court looked at a statute that had, I believe it had criminal and civil enforcement elements, and the Court said that it ---- that there had been ---- there was no evidence of criminal enforcement of that statute in 25 years. So when did the district court err in concluding there was standing? I'm sorry. I missed what you said, Your Honor. Where is the error in district courts concluding that there is standing in this case? So our argument is that there's a long history of disuse of this statute, and so there's no credible threat of prosecution. That's part of the injury in fact analysis under Article III standing in the preenforcement challenge. Thank you. Thank you. Hold on there, Mr. Scardell. It's taking me a little while to get used to that, too. Thank you. Thank you, Mr. Scardell. Yeah, I think that most helpful to the panel would be just to briefly set out again the context of the Texas Home and Health case. It's a road map with respect to the Eric Sparte Young exception. The parties that were sued included the AG, the state enforcing officials, and courts and clerks. So when I started the 281 Care Committee case before Judge Rosenbaum, and there's a transcript, I started by suing courts and clerks. Now, it wasn't judges like you. It was the Office of Administrative Hearing Judges, and I was convinced that that wasn't the way to go. I got rid of that complaint, and I started a new one against county attorneys, and that was the one, Judge Smith, that you and the panel decided. So I think that Judge Rosenbaum and the U.S. Supreme Court were right. We shouldn't sue courts and clerks for this inerrant substantive provision violating the free speech in 211B. You just go off and sue the O.H. judge? Well, the chief judge would have three or four lawsuits tomorrow for me, and they're not equipped to do that. Well, how about the AG? Well, the AG was sued in the Texas case, and what did the U.S. Supreme Court say? Well, there's no statutory provision saying that it enforces those laws. Off the hook. When I filed this lawsuit, I read 281 Care Committee, the decision of the Eighth Circuit, said I'm not going to sue the AG because I don't have a specific statutory provision that the AG enforces this law. But then the last defendant, last party standing, would be the county attorneys. Do I have a provision where the county attorneys may or must enforce the law? I do. I'm going to sue 211B.16, Subdivision 3. Oh, and surprise, the U.S. Supreme Court says, with respect to these licensing officials, do we have a statute that says that they must or may enforce the laws? Yes. So here the Eighth Circuit has been in a situation where it's led the U.S. Supreme Court to proper doctrine. 281 Care Committee led to the decision in Susan B. Anthony's list. And now, for the Eighth Circuit, the U.S. Supreme Court decision on Friday in Whole Women's Health clarifies that the standard for imminence under both Article 3 and under the Ex parte Young Doctrine is the same or similar. And I think that's the point. And then with respect to the litigation proceeding, there isn't a way for the county's attorney to shake 211B.16 off. This is a fact. The law was enacted, and it said the county attorneys may prosecute violations of the chapter. So no matter what they say, it's not going to be short of repeal. And the county attorneys, when those prosecutions occurred in 2002, they could have gone to the state legislature and repealed the Campaign Finance Act like Illinois and other states have. But instead, they went to the state legislature, and they encouraged the legislature to increase the remedies and create a civil process. So in Minnesota, and I speak for ordinary Minnesotans, we're tired of true speech being deterred by laws that ban false speech. That falls right in the heart of the First Amendment. Once you have prosecution, civil or criminal, regarding false political speech, you're deterring true speech. And you can look at the cases in this case. You can also look at the 211B.06 cases decided in 281 Care Committee. It's been 20 years at battle now for me as a professional, and it's time to start bringing some of these things to an end in Minnesota. Minnesota is not this great democratic experiment. There are a line, a series of violations of the First Amendment. Thank you.